## JEANSONNE et al. v. JEANSONNE.*

### No. 5281.

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1937.

*Rehearing denied Feb. 5, 1937.

Philo Coco, of Marksville, and I. E. Uzzo, of New Orleans, for appellant.

Couvillon & Couvillon, of Marksville, for appellees.

HAMITER, Judge.

On July 16, 1915, Louis J. Jeansonne and his wife, Mrs. Octavia Ducote Jeansonne, signed and executed a deed in favor of one of their daughters, Clara Jeansonne, conveying 12 acres of land with improvements thereon, located in Avoyelles Parish, and which belonged to the community of acquêts and gains. The deed was also signed by said daughter. She was unmarried at that time, but later became the wife of W. C. Bradford.

The instrument of conveyance was authentic in form and recited that: "This sale is made for and in consideration of the sum and price of $1,000.00 cash in hand to the vendor well and truly paid, the receipt whereof is hereby acknowledged and acquittance in full therefor granted."

Mrs. Octavia Ducote Jeansonne died in the year 1928. There were eleven children of her marriage with the said Louis J. Jeansonne, including the defendant herein.

This suit was brought on December 10, 1934, by Louis J. Jeansonne and six of his eleven children against the said Mrs. Clara Jeansonne Bradford for the purpose of having the above-mentioned deed annulled and set aside. Title to the property has never been transferred by the defendant.

The following pertinent allegations of the petition serve to disclose the basis of plaintiffs' attack on the instrument:

"Now your petitioner shows that though said act purports to be a sale by said father and his said wife to their said daughter, Clara Jeansonne, and though there is recited a consideration in money paid cash, such consideration never existed; that no sale was intended and no money intended to be paid, nor was in fact paid by the purported purchaser to the purported vendors, but the parties to said act intended to make a donation to their said daughter of said property deliverable at their death, they in the meantime to retain, enjoy and use the same until that event would happen. That the property involved constituted and comprised the home of said father and his deceased wife which they had no intention of divesting themselves of, prior to their death, but only desired to make provision for their said daughter after their death for the reason that at the time she was then unmarried and held in tender affection by her said parents who entertained the deluded hope that she would remain with them the balance of their lives, and they desired to encourage that idea on the part of their daughter.

"That they adopted the form of a sale so as to give the appearance of reality to the transaction and enable the said Clara Jeansonne to claim the property as her own at the death of her parents without the necessity of court proceedings, and to avoid any claim that might be made by her co-heirs had the intention of the parties taken the form pointed by law to represent the true transaction had between them."

Defendant first excepted to the petition as being too vague, and as not disclosing rights or causes of action in plaintiffs. These exceptions were overruled by the trial court. With full reservation of her rights under the exceptions, defendant then answered denying all allegations supporting plaintiffs' attack, and averring the validity of the deed.

After a trial on the merits, judgment was rendered declaring the instrument null and void and ordering its cancellation from the conveyance records. An appeal from this judgment was perfected by defendant.

It is our opinion that the exception of no cause of action should have been sustained as to all plaintiffs.

Defendant's father, who executed the deed and is a plaintiff herein, is not entitled to annul the instrument under the allegations of the petition. As above stated, the act is authentic in form, and therein such plaintiff acknowledged receiving a valuable consideration for the property. It is stated in Civil Code article 2236, that: "The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."

Article 2237 of the Civil Code provides: "The acknowledgment of payment, made in an authentic act, can not be contested, under pretense of the exception of non numerata pecunia, which is hereby abolished."

No allegations of fact are present in the petition disclosing that fraud or error attended the execution of the deed sought to be annulled. On the contrary, one of the above-quoted allegations clearly reveals that the signers were fully cognizant of the import of their act and they intended to and did adopt that form of instrument for a particular purpose. Furthermore, it is not alleged that a counterletter was given by the defendant herein, and interrogatories on facts and articles are not made use of by plaintiffs.

Involved in the case of Succession of Curtis, 156 La. 243, 100 So. 412, 413, was an action to set aside an authentic act of conveyance executed by plaintiff to his mother. The suit was directed against his coheirs of the deceased vendee. Plaintiff alleged that there was no consideration for the sale and no sale was intended; that his mother did not take possession of the property; and that the title was placed in the vendee for convenience. In sustaining an exception of no cause of action, the Supreme Court stated:

"The instrument attacked is valid in form and translative of the absolute ownership of the property. It was acknowledged by the vendor before a notary and two witnesses. It recites a legal consideration duly paid and advanced by the vendee to the vendor and full acquittance granted by the vendor. It is not pretended that there was a counter letter or any other written evidence evidencing a contrary agreement from what the act purported to be on its face and from its recitals. The deed remained upon the public records, its verity unchallenged, for some five years before the death of Mrs. Curtis, the vendee.

"The sole question presented, therefore, is whether the plaintiff after the death of his mother, as against his coheirs can be permitted by oral testimony to prove that the sale was a simulation and not what it purports to be on its face. There can be but one answer. The Civil Code and the uniform jurisprudence of this state is to the effect that no other evidence is admissible to establish simulation of a sale of immovable property, between the parties to the act, than a counter letter or evidence in

writing equivalent to a counter letter. Article 2236, Civil Code, declares that the authentic act is full proof of the agreement contained in it against the contracting parties and their heirs and assigns."

Numerous cases supporting the above doctrine are cited in the opinion of the Curtis Case, including Godwin v. Neustadtl, 42 La.Ann. 735, 7 So. 744; and Robinson v. Britton, 137 La. 863, 69 So. 282.

The syllabus of the court in the Robinson Case, which correctly reflects the holding set forth in the opinion, reads:

"In the absence of allegation of error, fraud, violence, or threats, in giving or obtaining consent to a sale of real estate by authentic act for a stated price in cash, which the act recites was paid and received, parol evidence is inadmissible, as between the parties, to annul the title so vested, and show that the real contract was an oral one, whereby the parties agreed to exchange tracts of land, and that, after plaintiff had conveyed his tract to defendant, defendant refused to comply with his part of said oral contract by conveying his tract to plaintiff."

The following is from the opinion in the Godwin Case:

"The Code declares that 'the authentic act is full proof of the agreement contained in it against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.' Rev.Civil Code 2236. It is horn-book law in our jurisprudence that the verity and reality of authentic sales can be assailed by the parties thereto only in two ways, viz.: (1) By means of a counter-letter; (2) by the answers of the other party to interrogatories on facts and articles."

This court approved the above-announced doctrine in the case of Brinker v. Feist, 14 La.App. 101, 129 So. 416.

It is true that plaintiffs allege that occupancy and possession of the property continued in defendant's father and mother until the mother's death, and thereafter in the father, and that he collected the rents and revenues and paid the taxes. But this is of no moment in so far as the question under discussion is concerned. The law on this question is well stated in the opinion of the Succession of Curtis Case, supra, as follows:

"But counsel for plaintiff argues that in this case it is alleged that Mrs. Curtis had never taken possession of the property and

it was competent for plaintiff to prove that allegation by parol testimony. In answer, it is sufficient to say that retention of possession by a vendor is only a badge of simulation as respects third persons and may be shown by parol testimony by such third persons, but as between the contracting parties retention of possession by the vendor cannot be established by parol testimony as a badge of simulation in the absence of the production of a counter letter or equivalent written evidence."

■ With reference to the plaintiffs who are children of the marriage of Louis J. Jeansonne and his wife, we think that the suit is premature.

If the transaction was a valid and legal sale, made for the cash consideration expressed in the deed, certainly their action is without merit. If, on the other hand, it was a donation in disguise, as they contend, they are not entitled to make this attack until after the death of their father, who is one of the plaintiffs herein.

It is conceded, for the purpose of this discussion, that the transfer of title was a mere donation in disguise. Also, it will be recalled that the property belonged to the community and that on the death of Mrs. Octavia Ducote Jeansonne her community interest and rights passed to her children. But we must also take into consideration that the instrument was signed by the head and master of the community and by his wife.

With reference to the disposal of community property by the husband, Civil Code, art. 2404, provides in part:

"The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.

"He can make no conveyance inter vivos, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. A gratuitous title within the contemplation of this article embraces all titles wherein there is no direct, material advantage to the donor."

The Supreme Court had occasion, in the case of Snowden v. Cruse, 152 La. 144, 92 So. 764, 765, to consider the second paragraph of the above-quoted article. In the opinion of that case, it was said:

"This limitation on the right of the husband, as head and master of the community, to do as he pleased with the effects of the community, was first introduced into our law by the Code of 1825, and is taken verbatim from the Code Napoleon, art. 1422.

"The French authors, and the French jurisprudence, from the very first time the question arose before the Court of Cassation in 1850, have been unanimous and uniform that this provision concerns the wife alone, and hence if she joins her husband in the donation, it is valid as to her, and consequently as to all other persons. These authorities are gathered in a long list, to be found in Baudry-Lacantinerie, vol. 16, p. 612, note 2; and in Dalloz Code Annoteé, art. 1422, Nos. 61–67.

"Hence in Trahan's Heirs v. Trahan, 8 La.Ann. 455, the emancipation of a slave (an immovable by law), as a reward for faithful services, was held to be valid against the heirs of the wife because she had joined the husband in the act of emancipation."

In the case presently before us, the wife having joined with her husband in the donation to the defendant, such disposition was binding on her and on her children.

The children are not permitted to attack the donation made by their father, the head and master of the community, during his lifetime. In the case of Maxwell v. Maxwell, 180 La. 35, 156 So. 166, 167, an attempt was made to annul a sale of certain real estate made by plaintiff's mother to his brother on the theory that the transaction was a donation in disguise. The mother was alive during the pendency of the litigation. The Supreme Court said:

"Article 2444 of the Civil Code provides that: 'The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.'

"Plaintiff, in attacking the sale in this case, alleges that it is a donation in disguise, as no price was paid. It is clear that plaintiff's rights are protected by this article, and that his cause of action can be asserted after his mother's death. Plaintiff has no present interest in the estate of his mother, who is alive, and plaintiff's suit is therefore premature."

 

Accordingly, the donation to defendant is immune from attack by such children at this time.

It is therefore ordered that the judgment of the trial court is reversed and set aside, the exception of no cause of action is sustained, and plaintiffs' suit is dismissed at their cost.